IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STAN E. CRAFTON, )<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>)<br>BLAINE LARSEN FARMS, INC., )<br>)<br>　　　　Defendant. )<br>_____ ) | Case No.  CV-04-383-E-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

The Court has before it Defendant's Motion to Alter or Amend Memorandum Decision and Order Regarding Summary Judgment and Renewed Motion to Amend Admissions (Docket No. 86), and Renewal of Plaintiff's Second Motion to Compel (Docket No. 82).

## INTRODUCTION

The parties to this breach of employment contract action filed cross motions for summary judgment. In a November 2005 Memorandum Decision and Order ("November Order"), the Court denied Defendant Blaine Larsen Farms, Inc.'s ("BLF") motion and denied in part and granted in part Plaintiff Crafton's motion. The Court granted Crafton's motion as it relates to a finding that BLF discharged Crafton as President/CEO of BLF. BLF now seeks reconsideration of that portion

**Memorandum Decision and Order - 1**

of the Court's decision.

Along with the summary judgment motions, BLF filed a motion to amend its responses to certain requests for admissions propounded by Crafton. The Court denied that motion, and BLF now seeks reconsideration of that decision as well.

## ANALYSIS

### I.   Motion to Alter or Amend (Reconsideration)

Reconsideration is appropriate only if one of the following three criteria are met: (1) the Court is presented with newly discovered evidence; (2) the Court committed clear error or its decision was manifestly unjust; or (3) there is an intervening change in controlling law. *See School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

BLF contends that the Court committed clear error in its November Order. In the order, the Court refused to allow BLF to amend its original admissions and determined that, based on those original admissions, BLF's Executive Committee discharged Crafton as President/CEO of BLF in December 2003.

In its decision, the Court declined to allow BLF to amend its admissions based, in part, on the Court's determination that the proposed amended admissions would, like the original admissions, constitute an admission that BLF discharged

**Memorandum Decision and Order - 2**

Crafton as President/CEO of BLF.  The Court based its reasoning on the principle that any material change in duties or significant reduction in rank constitutes a constructive discharge.  In essence, the Court concluded that Crafton's employment contract with BLF called for him to serve as President/CEO.  Therefore, any significant change in duties and reduction in rank would amount to the constructive discharge from the position for which he was hired.  Unless justified, such a discharge would constitute a breach of Crafton's employment contract.

BLF argues that the Court failed to follow established Idaho case law recognizing that "[i]n Idaho, constructive discharge can only be proved if the employee establishes facts showing harassment, intimidation, coercion or other aggravating conduct on the part of the employer which renders working conditions intolerable."  (BLF's Memorandum in Support of Motion to Alter or Amend, p. 4). The two Idaho cases cited by BLF hold that constructive discharge is established if there is "harassment, intimidation, coercion or other aggravating conduct [on the part of the employer] that renders working conditions intolerable."  *O'Dell v. Basabe*, 810 P.2d 1082, 1103 (1991); *Knee v. Sch. Dist. No. 139*, 676 P.2d 727, 730 (Idaho Ct. App. 1984).  The Idaho Court of Appeals, in *Knee*, went so far as to say that "[o]ur research has disclosed that it is not appropriate to apply the

**Memorandum Decision and Order - 3**

doctrine of constructive discharge absent facts showing harassment, intimidation, coercion or other aggravating conduct on the part of the employer which renders working conditions intolerable." 676 P.2d at 730. However, in making this assertion, the Idaho Court of Appeals directly cited a single 5th Circuit decision – *Young v. Southwestern Sav. and Loan Ass'n*, 509 F.2d 140 (1975) – involving a Title VII claim of religious discrimination in which it was alleged that the employer had created such a hostile work environment that the employee was compelled to quit to escape intolerable and illegal employment requirements. Thus, it appears clear that the Idaho courts intend to follow the lead of the federal courts in holding that an employer cannot avoid liability for terminating an employee by simply creating a work environment that is so hostile that the employee is compelled to quit.

     However, the plaintiff does not assert that he was constructively discharged because of a hostile work environment. Rather, he asserts that he was hired pursuant to a written employment contract to fill a particular position, his employer unilaterally changed his duties and demoted him, and his employer thereby discharged him in breach of his employment contract. That is a far different claim and one which the Idaho appellate courts have not specifically addressed. However, such a claim has been considered by numerous other jurisdictions which

**Memorandum Decision and Order - 4**

have uniformly concluded that such action, if unjustified, constitutes a breach of the employment contract.[1]  *See* David J. Oliveiri, Annotation, *Reduction in Rank or Authority or Change of Duties as Breach of Employment Contract*, 63 A.L.R.3d 539 (1975); *Seymore v. Reader's Digest Assn.*, 493 F. Supp. 257, 264 (S.D.N.Y. 1980); *Tracey v. Sconnix Broadcasting of South Carolina, Inc.*, 325 S.E.2d 542 (S.C. 1985); *Miller v. Winshall*, 400 N.E.2d 1306, 1310 (Mass. App. Ct. 1985). The Court finds nothing in the decisions cited by the defendant which suggests that the Idaho courts would not follow suit.  In fact, in *O'Dell*, the Idaho Supreme Court recognized that a jury could find that an employer breached an employment contract with its employee by offering the employee a different position with the company.  *See O'Dell*, 810 P.2d at 1103.

Ultimately, the Court determined that the equitable test of balancing the right to a full trial on the merits with the parties' justified reliance on pre-trial

---

[1] In many instances, the courts have described this situation as a "constructive discharge."  *See, e.g., Brock v. Mutual Reports, Inc.*, 397 A.2d 149 (D.C. 1979).  The Court chose to use the same or similar language in describing its decision here.  The use of that term may have been inadvisable because it is also a term of art which refers to circumstances where an employer has effectively terminated an employee by creating a hostile and intolerable work environment.  It is that use of the term which the Idaho courts considered in *O'Dell v. Basabe*, 810 P.2d 1082 (1991) and *Knee v. Sch. Dist. No. 139*, 676 P.2d 727 (Idaho Ct. App. 1984). However, that is not the claim of the Plaintiffs here and the Court may have been better advised to clarify that the Defendant's demotion of the Plaintiff constituted a breach of the employment contract.  The reference to a "constructive discharge" was both unnecessary and potentially misleading.

**Memorandum Decision and Order - 5**

procedures and the finality of issues deemed no longer in dispute required the Court to hold BLF to its original admissions.  *See Tower Partners, L.L.C. v. Beaver Creek Co.*, 1996 WL 578517 *2 (E.D.N.C.).  Those original admissions stated that Crafton was removed as President/CEO of BLF pursuant to BLF Executive Committee action on December 15, 2003.  Based on those admissions, the Court correctly determined that BLF discharged Crafton as President/CEO of BLF.  Accordingly, the Court did not commit clear error, and the Court will deny BLF's motion.[2]

Finally, BLF now seeks permission to amend its original admissions in a manner different from its first proposed amendments.  At this late stage of the case, the Court finds that the equitable test of balancing the right to a full trial on the merits with the parties' justified reliance on pre-trial procedures and the finality of issues deemed no longer in dispute tips even more in favor of reliance on the initial admissions.  Therefore, the Court will deny BLF's request.

## II.   Motion to Compel

Crafton requests that the Court issue an order compelling BLF to produce

---

[2] To be clear, the Court notes that it concluded that BLF discharged Crafton as President/CEO of BLF based on BLF's original admission that it did so.  Thus, even if this Court has somehow misstated Idaho law regarding a determination that an employer can breach an employment contract based on a finding that an employer unilaterally changed the employee's duties and demoted him, the Court did not commit clear error in its decision.

**Memorandum Decision and Order - 6**

any financial documents in its possession concerning payment of any salary, bonuses and/or benefits or remuneration to Blaine Larsen from and after October 15, 1998 through the present as outlined in Crafton's Request No. 11 to his Fourth Set of Interrogatories and Requests for Production of Documents. BLF initially objected to production based on relevancy and confidentiality. BLF then recanted its objection and informed Crafton that it would produce the requested information. Crafton then withdrew its motion. However, BLF again changed its mind and decided not to provide the information, based again on relevancy and confidentiality objections. Crafton then renewed its motion to compel.

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

This lawsuit centers around Crafton's claim for breach of employment contract. Under the terms of Crafton's employment contract with BLF, Crafton became CEO of BLF in October, 2003. Blaine Larsen was CEO of BLF immediately preceding Crafton. Crafton claims that pursuant to his employment contract, he was entitled to share in the executive bonus pool. Crafton claims that Blaine Larsen's income history is relevant to determining his damages based on

**Memorandum Decision and Order - 7**

what income and bonuses Crafton could have obtained had BLF not breached the employment contract.

The Court finds that the information sought is, at the very least, reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, the Court with overrule the relevancy objection.

With respect to BLF's confidentiality objection, the Court is mindful of the confidential nature of BLF's financial documents.  However, this is not grounds for sustaining BLF's objection to producing the documents, and the Court will overrule that objection as well.  To preserve the confidentiality of the documents, the Court will require the parties to agree on the form of a protective order to be entered prior to disclosure of the documents.  The Court will also award Crafton the costs and attorneys fees it incurred in being compelled to renew its motion to compel.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED, that Defendant's Motion to Alter or Amend Memorandum Decision and Order Regarding Summary Judgment and Renewed Motion to Amend Admissions (Docket No. 86), shall be and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiff's Renewal of Plaintiff's Second

Motion to Compel (Docket No. 82) shall be and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that BLF shall produce to Crafton any financial documents in its possession concerning payment of any salary, bonuses and/or benefits or remuneration to Blaine Larsen from and after October 15, 1998 through the present within five (5) days of the entry of a protective order.

IT IS FURTHER ORDERED that the parties shall agree upon the language of a protective order regarding the above required disclosure and submit it to the Court withing ten (10) days of the date of this Order.

IT IS FURTHER ORDERED that BLF pay Crafton its reasonable costs and attorney fees incurred in bringing its Renewal of Plaintiff's Second Motion to Compel.

DATED: **February 13, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 9**